# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA
# WESTERN DIVISION

| | |
|---|---|
| LIBERTY MUTUAL FIRE INSURANCE COMPANY, OHIO SECURITY INSURANCE COMPANY, and EMPLOYERS INSURANCE CO. WAUSAU, <br><br> Plaintiffs, <br><br> v. <br><br> INFINITE COMMUNICATIONS, INC., <br><br> Defendant. | Case No.: **5:17-cv-195** <br><br><br> **COMPLAINT** |

Plaintiffs, Liberty Mutual Fire Insurance Company ("Liberty Fire"), Ohio Security Insurance Company ("Ohio Security"), and Employers Insurance Co. Wausau ("Employers Insurance"), complaining of Defendant Infinite Communications, Inc. ("Infinite"), allege:

## PARTIES, JURISDICTION AND VENUE

1. Liberty Fire is a corporation organized and existing under the laws of the State of Wisconsin with its principal place of business in Boston, Massachusetts.

2. Ohio Security is a corporation organized and existing under the laws of the State of New Hampshire with its principal place of business in Boston, Massachusetts.

3. Employers Insurance is a corporation organized and existing under the laws of the State of Wisconsin with its principal place of business in Boston, Massachusetts.

4. Plaintiffs were at all relevant times authorized to do business in North Carolina by the North Carolina Department of Insurance.

5. Plaintiffs are all subsidiary underwriting companies for the holding company Liberty Mutual Group, Inc. ("Liberty Mutual").

1

6. Upon current information and belief, Infinite is a corporation organized and existing under the laws of the State of Florida with its principal place of business and registered office in Cary, North Carolina.

7. Upon current information and belief, Infinite was at all relevant times authorized to conduct business operations in North Carolina by the North Carolina Secretary of State, and in fact did conduct business in North Carolina.

8. This Court has personal jurisdiction over Infinite pursuant to N.C. Gen. Stat. § 1-75.4 and by virtue of Infinite's contacts with this judicial district.

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interests and costs.

10. Venue is proper under 28 U.S.C. § 1391(b) based on Infinite's domicile and the fact a substantial part of the events and omissions giving rise to the action occurred within this Court's district.

11. Plaintiffs have complied with all conditions precedent, including the applicable statute of limitations and/or statute of repose, necessary for the filing of this civil action

**FACTUAL BACKGROUND**

12. The allegations set forth in Paragraphs 1 through 11 are incorporated by reference as if fully alleged herein.

13. Infinite is a company that provides a variety of telecommunications services throughout North Carolina and the United States.

14. Upon information and belief, in or around 2015 and early 2016, Infinite sought out and applied to Liberty Mutual for a number of different types of insurance coverage through Infinite's insurance agent Insurance Solutions, Inc., located in Garner, North Carolina.

15. In response to Infinite's applications for insurance, Plaintiffs, each of which are underwriting companies for Liberty Mutual, issued policies of insurance to Infinite as detailed below.

## Business Automobile Policy

16. On or about September 18, 2015, Ohio Security issued Infinite a Business Automobile Policy, Policy No.: BAS (16) 56 91 33 92, with a policy term of September 18, 2015, through September 18, 2016 ("Auto Policy").

17. The Auto Policy is an insurance contract which provides insurance coverage for certain liabilities as set forth in the Auto Policy in exchange for the payment of premiums.

18. Ohio Security fulfilled its contractual obligations and provided the coverage afforded under the Auto Policy.

19. Infinite failed to pay the premium installments due under the Auto Policy for the insurance coverage provided.

20. The Auto Policy was cancelled effective March 24, 2016.

21. Infinite owes Ohio Security $28,235.29 for the coverage it provided under the Auto Policy from September 18, 2015, through March 24, 2016.

22. Ohio Security issued invoices and demanded payment of the unpaid premiums to Infinite in a timely fashion.

23. Infinite has failed and refused to remit payment of the $28,235.29 owed to Ohio Security.

## Workers Compensation Policy

24. On or about January 14, 2016, Liberty Fire issued Infinite a Workers Compensation and Employers Liability Policy, Policy No.: WC2-Z51-291727-016, with a policy term of January 14, 2016, through January 14, 2017 ("Workers Comp Policy").

25. The Workers Comp Policy is an insurance contract which provides insurance coverage for certain liabilities as set forth in the Workers Comp Policy in exchange for the payment of premiums.

26. Pursuant to the terms of the Workers Comp Policy, initial premiums were calculated based on information submitted by Infinite regarding Infinite's estimated payroll for the effective dates of coverage.

27. Since the initial premiums are based on estimated information, the terms of the Workers Comp Policy provide that the premiums charged for coverage could be modified from the estimated amount based on an audit conducted by Liberty Fire.

28. Liberty Fire fulfilled its contractual obligations and provided the coverage afforded under the Workers Comp Policy.

29. Infinite failed to pay the premium installments due under the Workers Comp Policy for the coverage provided.

30. The Workers Comp Policy was cancelled effective March 24, 2016.

31. Based on an audit of Infinite's payroll records, Liberty Fire discovered that Infinite's payroll was much higher than initially reported, and therefore, Liberty Fire's exposure was significantly greater under the Workers Comp Policy than initially calculated.

32. In light of the audit – and in accordance with the terms of the Workers Comp Policy – Liberty Fire recalculated the premium due based on the actual exposure, resulting in a higher premium than the original estimate.

33. Infinite owes Liberty Fire $145,272 for the coverage it provided under the Workers Comp Policy from January 14, 2016, through March 24, 2016.

34. Liberty Fire issued invoices and demanded payment of the unpaid premiums in a timely fashion.

35. Infinite has failed and refused to remit payment of the $145,272 owed to Liberty Fire.

## Commercial General Liability Policy

36. On or about February 11, 2016, Employers Insurance issued Infinite a Commercial General Liability Policy, Policy No.: TBC-Z51-291727-026, with a policy term of February 11, 2016, through January 14, 2017 ("CGL Policy").

37. The CGL Policy is an insurance contract which provides insurance coverage for certain liabilities as set forth in the CGL Policy in exchange for the payment of premiums.

38. Like the Workers Comp Policy, the initial premiums for the CGL Policy were calculated based on information submitted by Infinite regarding Infinite's estimated payroll for the effective dates of coverage.

39. Since the initial premiums are based on estimated information, the terms of the CGL Policy provide that the premiums charged for coverage could be modified from the estimated amount based on an audit conducted by Employers Insurance.

40. Under the terms of the CGL Policy, claims were subject to a $1,000 deductible.

41. On or about April 14, 2016, Employers Insurance received notice of a claim under the CGL Policy for a loss that occurred on or about February 24, 2016.

42. Employers Insurance paid the claim.

43. Employers Insurance fulfilled its contractual obligations, provided the coverage afforded under the CGL Policy, and paid the claim submitted to it.

44. Infinite did not pay the required $1,000 deductible for the claim made under the CGL Policy.

45. Infinite failed to pay the premium installments due under the CGL Policy for the coverage provided.

46. The CGL Policy was cancelled effective March 24, 2016.

47. Based on an audit, Employers Insurance discovered that Infinite's payroll numbers were significantly higher than initially reported, and therefore, Employers Insurance's exposure was significantly greater under the CGL Policy than it initially calculated.

48. In light of the audit – and in accordance with the terms of the CGL Policy – Employers Insurance recalculated the premium due based on the actual exposure, resulting in a higher premium than the original estimate.

49. Infinite owes Employers Insurance $18,535 for the coverage it provided under the CGL Policy from February 11, 2016, through March 24, 2016.

50. Infinite owes Employers Insurance $1,000 for the unpaid deductible for the claim made and paid under the CGL Policy.

51. Employers Insurance issued invoices and demanded payment for both the unpaid premiums and the unpaid deductible in a timely fashion.

52. Infinite has failed and refused to remit payment of the $19,535 it owes to Employers Insurance.

## COUNT ONE
**(Breach of Contract: Auto Policy)**

53. The allegations set forth in Paragraphs 1 through 52 are incorporated by reference as if fully alleged herein.

54. The Auto Policy entered between Ohio Security and Infinite was based on valuable consideration and contained mutually binding obligations as expressed in its terms and provisions that are valid and enforceable at law.

55. Infinite agreed to remit payment of premiums in consideration for Ohio Security's provision of insurance coverage under the Auto Policy.

56. Ohio Security performed all of its obligations under the Auto Policy.

57. Infinite has breached this contract by failing to remit payment of $28,235.29 owed to Ohio Security under the terms of the Auto Policy.

58. As a direct and proximate result of Infinite's breach of contract as alleged herein, Ohio Security has suffered at least $28,235.29 in actual damages, and has further incurred additional consequential and incidental damages as will be proven at trial

59. Thus, Ohio Security is entitled to a judgment against Infinite in the amount of at least $28,235.29, plus interest and costs as allowed by law.

## COUNT TWO
**(Breach of Contract: Workers Comp Policy)**

60. The allegations set forth in Paragraphs 1 through 59 are incorporated by reference as if fully alleged herein.

61. The Workers Comp Policy entered between Liberty Fire and Infinite was based on valuable consideration and contained mutually binding obligations as expressed in its terms and provisions that are valid and enforceable at law.

62. Infinite agreed to remit payment of premiums, including audit premiums, in consideration for Liberty Fire's provision of insurance coverage under the Workers Comp Policy.

63. Liberty Fire performed all of its obligations under the Workers Comp Policy.

64. Infinite has breached this contract by failing to remit payment of $145,272 owed to Liberty Fire under the terms of the Workers Comp Policy.

65. As a direct and proximate result of Infinite's breach of contract as alleged herein, Liberty Fire has suffered at least $145,272 in actual damages, and has further incurred additional consequential and incidental damages as will be proven at trial

66. Thus, Liberty Fire is entitled to a judgment against Infinite in the amount of at least $145,272, plus interest and costs as allowed by law.

## COUNT THREE
**(Breach of Contract: CGL Policy)**

67. The allegations set forth in Paragraphs 1 through 66 are incorporated by reference as if fully alleged herein.

68. The CGL Policy entered between Employers Insurance and Infinite was based on valuable consideration and contained mutually binding obligations as expressed in its terms and provisions that are valid and enforceable at law.

69. Infinite agreed to remit payment of premiums, including audit premiums, in consideration for Employers Insurance's provision of insurance coverage under the CGL Policy.

8

Case 5:17-cv-00195-D   Document 1   Filed 04/25/17   Page 8 of 10

70. Under the terms of the CGL Policy, Infinite further agreed to pay a $1,000 deductible for claims made under the CGL Policy.

71. Employers Insurance performed all of its obligations under the CGL Policy.

72. Infinite has breached this contract by failing to remit payment of $19,535 ($1,000 in unpaid deductibles and $18,535 in unpaid premiums) owed to Employers Insurance under the terms of the CGL Policy.

73. As a direct and proximate result of Infinite's breach of contract as alleged herein, Employers Insurance has suffered at least $19,535 in actual damages, and has further incurred additional consequential and incidental damages as will be proven at trial

74. Thus, Employers Insurance is entitled to a judgment against Infinite in the amount of at least $19,535, plus interest and costs as allowed by law.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Ohio Security, Liberty Fire, and Employers Insurance request the following relief from the Court:

1. That the Court enter a judgment against Infinite in favor of Ohio Security in the amount of at least $28,235.29, along with accrued interest on this amount as allowed by law;

2. That the Court enter a judgment against Infinite in favor of Liberty Fire in the amount of at least $145,272, along with accrued interest on this amount as allowed by law;

3. That the Court enter a judgment against Infinite in favor of Employers Insurance in the amount of at least $19,535, along with accrued interest on this amount as allowed by law;

4. For an award of costs and attorneys' fees in this matter as allowed by law; and

5. For such other and further relief as this Court may deem just and proper.

Respectfully submitted this the 25th day of April, 2017.

**WALL TEMPLETON & HALDRUP, P.A.**

By: /s/ William Silverman_____
William W. Silverman (NCSB No. 38511)
Robin A. Seelbach (NCSB No. 44780)
1001 Wade Avenue, Suite 423
Raleigh, North Carolina 27605
Tel: (919) 865-9500
Fax: (919) 865-9501
Email: william.silverman@walltempleton.com
robin.seelbach@walltempleton.com

*Attorneys for Plaintiffs Liberty Mutual Fire Insurance Company, Ohio Security Insurance Company, and Employers Insurance Co. Wausau*